UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREGORY A. FIGEL,

    Plaintiff,

v.                                               Case No. 2:03-cv-216
                                               HON. R. ALLAN EDGAR

WILLIAM OVERTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gregory A. Figel, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), initially filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on October 17, 2003, against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include MDOC Director William Overton, MDOC Special Activities Coordinator David Burnett, and MDOC Director Patricia Caruso. Plaintiff's complaint alleges that on November 1, 2002, Defendant Overton implemented MDOC Policy Directive 05.03.118, which provides that prohibited mail includes a book, magazine, newspaper, or other publication that is not received directly from the publisher or from an authorized vendor, or not ordered by the prisoner using established ordering procedures. Plaintiff claims that, pursuant to this policy, he has had religious books confiscated and rejected on the following dates in 2003, May 6, May 16, May 20, May 21, and June 11. These publications were sent by the Philadelphia Church of God (PCG).

Plaintiff's complaint asserts that he filed several grievances and sent letters of complaint to the named Defendants, but that he has not received any relief. In his complaint,

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments, as well as his rights pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA). Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

On December 2, 2003, the court dismissed Plaintiff's complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e(c). Plaintiff filed an appeal and the Sixth Circuit reversed and remanded the case with regard to Plaintiff's First Amendment and RLUIPA claims. Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing*

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their motion for summary judgment, Defendants contend that Plaintiff's claims are now moot because the PCG was added to the approved list of religious vendors at LMF in July of 2003. Thus, Defendants assert that there is no "case or controversy" to support federal jurisdiction. However, the undersigned notes that a change in departmental policy which constitutes the voluntary cessation of allegedly illegal conduct does not deprive a tribunal of power to hear and determine a case, i.e., it does not make the case moot. There is a public interest in having the legality of a practice settled, which militates against a finding of mootness. Where the defendants have not admitted that the challenged activity is illegal or demonstrated conclusively that the wrong will not be repeated, the case cannot be considered moot. *Monroe v. Bombard*, 422 F. Supp. 211, 215 n. 5 (S.D. New York 1976) (citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-633 (1953)). Accordingly, Defendants are not entitled to summary judgment on Plaintiff's damages claims. However, the change in the prison policy renders Plaintiff's requests for declaratory and injunctive relief moot because no need exists for this court to issue an injunction when prison authorities have voluntarily changed the allegedly unconstitutional practice. *See Kellogg v. Shoemaker,* 46 F.3d 503, 507 (6th Cir.1995). Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief.

Defendants assert that they are entitled to qualified immunity with regard to Plaintiff's First Amendment and RLUIPA claims for damages. The Supreme Court has held that prison regulations (similar to those at issue in this case) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989).

Emphasizing the extreme deference accorded to prison officials, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not. . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Thornburg*, 490 U.S. at 412-13 (citations omitted). The Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

Defendants contend that established law governing First Amendment claims dictates that prison rules rejecting mail not sent from a publisher or approved vendor in order to prevent the introduction of contraband are constitutional. However, as noted by the Sixth Circuit in its February 4, 2005, opinion remanding this case, the First Amendment issue in this case is not whether the policy was reasonably related to a legitimate penological interest, but whether Defendants' initial refusal to authorize PCG as a vendor was reasonably related to a legitimate penological interest. (Docket #11, p. 6.) Defendants have not come forward with any evidence suggesting that the PCG is not a legitimate church or religious organization.

As noted above, Plaintiff also claims that Defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA)[1], 42 U.S.C. § 2000cc-1, which provides:

> (a) General Rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

In its February 4, 2005 opinion remanding this case, the Sixth Circuit noted that Plaintiff alleged that the confiscation of specific religious texts substantially burdened his right to practice his religion. The Court further noted that Plaintiff was not required to explain how his

---

[1] The United States Supreme Court recently reversed the decision of the Sixth Circuit and held that the RLUIPA does not violate the Establishment Clause. *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2120 (2005).

inability to obtain the books burdened the exercise of his religion in his initial complaint in order to set forth a claim under the RLUIPA. (Docket #11, p. 8.) Defendants fail to address this aspect of Plaintiff's claims. Therefore, the undersigned concludes that there is a genuine issue of material fact that Defendants' conduct violated Plaintiff's rights under the RLUIPA.

The undersigned recommends that the court deny Defendants' request for qualified immunity. As noted above, Defendants allegedly denied Plaintiff his mail when such conduct was not reasonably related to a legitimate penological interest. Defendants also allegedly confiscated Plaintiff's religious texts, which substantially burdened Plaintiff's exercise of his religion. Such conduct, if proven, violates clearly established statutory and constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment and RLUIPA claims for damages.

In summary, in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief, but Defendants have failed to support their motion to dismiss and/or for summary judgment with regard to Plaintiff's claims for damages. Accordingly, it is recommended that Defendant's Motion for Dismissal and/or Summary Judgment (docket #22) be granted with regard to Plaintiff's claims for injunctive and declaratory relief and denied with regard to Plaintiff's damages claims.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

- 7 -

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 14, 2006